IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**REBECCA STERLING**                                                           **PLAINTIFF**

**v.**                              Case No. **4:19-cv-00025 KGB**

**THE BOARD OF TRUSTEES OF**
**THE UNIVERSITY OF ARKANSAS,** *et al.*                      **DEFENDANTS**

## OPINION AND ORDER

Plaintiff Rebecca Sterling applied for a position at the University of Arkansas - Pulaski Technical College ("UAPTC"). Ms. Sterling alleges in her amended complaint that she was denied this position because of her age, association with a person with a disability, and use of leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, *et seq.* (Dkt. No. 2, ¶¶ 29–37). She brings this suit against the Board of Trustees of the University of Arkansas ("Board of Trustees"), the members of the Board of Trustees in their official capacities, Dr. Bentley Wallace in his individual and official capacities, and UAPTC, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and the FMLA (Dkt. No. 2, ¶¶ 2–3). Before the Court is defendants' motion for summary judgment (Dkt. No. 8). Ms. Sterling filed a response (Dkt. No. 14), and defendants replied (Dkt. No. 15). For the reasons discussed below, the Court grants in part and denies in part defendants' motion for summary judgment (Dkt. No. 8).

### I.    Factual Background

Unless otherwise noted, the following facts are taken from defendants' statement of material facts not in dispute and Ms. Sterling's response to defendants' statement of material facts not in dispute (Dkt. No. 10; Dkt. No. 14-2).

Ms. Sterling is 59 years old and is a full-time faculty instructor in the Business Department at UAPTC (Dkt. No. 10, ¶ 1). UAPTC became a part of the University of Arkansas system on February 1, 2017, at which point the Board of Trustees of the University of Arkansas assumed control over UAPTC (*Id.*, ¶ 46). Ms. Sterling was hired originally by UAPTC as a keyboarding instructor in the Business Department in August 2012 (*Id.*, ¶ 2). Beginning in 2014, Ms. Sterling and a co-worker were selected by a committee to cochair the Business Department (*Id.*, ¶ 3). She later assumed temporary duties as Interim Dean of the Department after the Provost left in late 2016 (*Id.*, ¶ 4). In January 2018, UAPTC underwent a reorganization of its academic departments and reduced five dean positions to three (*Id.*, ¶ 5). Ms. Sterling was notified that her dean position would be eliminated effective June 30, 2018 (*Id.*). Ms. Sterling was invited to apply for one of the new dean positions but felt she would not be qualified (*Id.*, ¶ 6). She was also informed that she could return to a faculty teaching position (*Id.*). Ms. Sterling has no unfavorable evaluations or disciplinaries in her personnel file (*Id.*, ¶ 47).

In April 2018, Ms. Sterling learned of a job announcement for a nonacademic staff position—the Coordinator of Community Education ("Coordinator")—which was open to both internal and external applicants (*Id.*, ¶ 7). Ms. Sterling was interested in the position in part because it would pay $48,000 for a twelve-month appointment instead of $40,450 for a nine-month appointment in her faculty position, which had been renewed for the 2019–20 term (*Id.*, ¶¶ 14–16).

Dr. Wallace was the hiring official for the Coordinator position (*Id.*, ¶ 8). At the time of the job posting, Dr. Wallace was Vice Chancellor responsible for the non-credit instructional operations of the college, which included all workforce and non-credit education, non-credit community education, and management of the business and industry center, where the Coordinator

position is housed (*Id.*, ¶ 9).  The position description was developed by Dr. Wallace and listed essential criteria and preferred qualifications (*Id.*, ¶ 10).  This was the third time he had hired for this position (*Id.*, ¶ 25).  The essential job functions and preferred qualifications listed in the job announcement had evolved over time to reflect Dr. Wallace's expectations and vision of the position (*Id.*, ¶ 26).  Dr. Wallace was then selected to fill a new dean position as Dean of the School of Professional and Technical studies in July 2018 (*Id.*, ¶ 11).  He continued supervising the Coordinator position until the Director of Workforce Development was hired the following October (*Id.*).

Ms. Sterling submitted a transfer form and her application materials, along with over 40 other applicants (*Id.*, ¶ 17).  Human Resources then screened the applications for minimum qualifications and that field was narrowed to six individuals for interviews, which included Ms. Sterling (*Id.*, ¶ 18).  Dr. Wallace selected the persons to interview and initially did not include Ms. Sterling (Dkt. No. 14-2, ¶ 18).  Another hiring committee member, Elizabeth Reves, added Ms. Sterling to the list to be interviewed (*Id.*)  Also serving on the hiring committee were Somerly Mustin, Verkeytia Long, and a representative from Human Resources, Reba Treece (now Reba Melton) (Dkt. No. 10, ¶ 19).

The interviews were held over two days, May 8–9, 2018 (*Id.*, ¶ 21).  On May 2, 2018, Ms. Sterling emailed Dr. Wallace asking if she could reschedule her interview spot from May 8, stating that she would be attending a "cancer doctor's appointment" with her mother (*Id.*).  Dr. Wallace expressed his sympathy and agreed to interview her another time (*Id.*, ¶ 22).  Ms. Sterling later responded that she could make the original interview time, so her interview remained scheduled for May 8, 2018 (*Id.*).

Ms. Sterling took FMLA leave during the time period of May 8, 2018, which had been approved by her supervisor, Marla Strecker (*Id.*, ¶ 23).  Defendants claim that the only person on the interview committee with knowledge of Ms. Sterling's FMLA leave was the HR representative, Ms. Melton, who had filed the FMLA paperwork (*Id.*, ¶ 24).  Ms. Sterling claims that Dr. Wallace knew that Ms. Sterling had at least planned to take leave for an FMLA qualifying condition and therefore had engaged in a protected activity (Dkt. No. 14-2, ¶ 21).

Each member of the interviewing committee was provided with copies of the application materials for each candidate along with a scoring rubric, as per university practice (Dkt. No. 10, ¶ 25).  Dr. Wallace had determined the questions that were included on the rubric (*Id.*, ¶ 26).  Interviewers scored each candidate from 0–50 for a total possible score of 250 (*Id.*, ¶ 29).  Dr. Wallace scored Ms. Sterling lower than the other interviewees with a score of 34 and scored Kristin Howell, a 36-year-old who was ultimately selected for the position, highest with a score of 46 (*Id.*). Ms. Melton scored the candidates almost the opposite of Dr. Wallace, giving Ms. Sterling a perfect score of 50 and Ms. Howell a 37 (*Id.*, ¶ 30).  The three remaining members of the interview committee all scored Ms. Sterling higher than Ms. Howell (Dkt. No. 14-2, ¶¶ 62–64).  The final composite scores were Ms. Sterling at 224 and Ms. Howell at 215 (Dkt. No. 10, ¶ 28).  Defendants contend that hiring is based on a consideration of everything received during the hiring process and that there is no policy at UAPTC that mandates that the highest scoring applicant be hired to the position (*Id.*, ¶¶ 31–32).  Ms. Sterling disputes this contention, arguing that there was a policy stating a preference for hiring from within, that the procedure was to hire the top scoring candidates, and that Dr. Wallace violated policy by acting subjectively and ignoring the committee (Dkt. No. 14-2, ¶¶ 31–32).   Ms. Sterling notes that even Dr. Wallace testified that "we don't have singular people making decisions typically." (*Id.*, ¶ 32).

4

The parties are not in agreement as to what happened following the interviews.  Defendants claim that the hiring committee did not arrive at a decision on whom to hire and agreed that Dr. Wallace could take the evening of May 9, 2018, to review the top two applicants (*Id.*, ¶¶ 33–34). According to defendants, Mr. Wallace has stated consistently that, based on all the materials presented as well as the interviews and hiring references, Ms. Howell's prior experience aligned most closely with the essential duties and preferred qualifications (*Id.*, ¶ 51).  Ms. Howell's previous positions included a combined five years of fundraising, event management, and community outreach, as well as budget planning, staff hiring, and creation of promotional materials at the Arthritis Foundation and the Hilary Rodham Clinton Children's Library (*Id.*, ¶ 56). Defendants claim that Ms. Sterling has admitted that she does not have outreach and community involvement in the Pulaski County area (*Id.*, ¶ 58).

However, Ms. Sterling denies that the group did not arrive at a decision on the hire after discussion (Dkt. No. 14-2, ¶ 33).  Rather, Ms. Sterling asserts that the hiring committee came to a consensus on the basis of the highest scorer from the rubric after five to ten minutes of discussion (*Id.*).  Ms. Sterling maintains that members of the committee were not given time to discuss and come to a consensus, nor was there any effort to do that (*Id.*).  Instead, Ms. Sterling asserts that Dr. Wallace decided to take the night to make a decision in violation of policy, procedure, and practice (*Id.*, ¶ 34).  Ms. Sterling contends that, whether Dr. Wallace reviewed the materials or not, it was apparent from the scoring and how he conducted the interview and decision process that he was angling for his preferred candidate (*Id.*, ¶ 35).  Ms. Sterling denies that Ms. Howell was the best candidate because Ms. Sterling had more experience in more fields, a proven track record of good performance, and a bachelor's and master's degree in educational fields (*Id.*, ¶¶ 35–36).

5

The next morning, May 10, 2018, Dr. Wallace sent an email to the committee stating that he had determined that Ms. Howell would be the "best fit" and that her experience was "directly aligned with many of the key elements of the position, both in the essential duties and preferred qualifications" (Dkt. No. 10, ¶¶ 35-36). Ms. Sterling admits that Dr. Wallace chose Ms. Howell and sent an email to the committee but denies that Ms. Howell was the best candidate (Dkt. No. 14-2, ¶¶ 35–36). Ms. Sterling testified at her deposition that she did not want the current Coordinator removed from the job and, when asked if there were any other positions that she would like to assume at UAPTC, she knew of none (*Id.*, ¶ 48).

Following the decision, Ms. Melton felt that Ms. Howell's selection violated school policy and told HR Director Sherry Young that Ms. Sterling had received a higher score (Dkt. No. 10, ¶ 39). To address Ms. Melton's concerns, the Chancellor, Margaret Ellibee, asked Dr. Wallace, Ms. Young, and Ms. Young's supervisor, Tara Smith, to meet the next day (*Id.*, ¶ 40). The content of the meeting is disputed by the parties. Defendants argue that the meeting did not affect the final hiring result (*Id.*, ¶ 44), and Ms. Sterling argues that the meeting could not have impacted the decision (Dkt. No. 14-2, ¶¶ 40, 43). UAPTC has policies and practices, some included in writing in the employee handbook (*Id.*, ¶¶ 68–71). The parties dispute the force and significance of those policies and practices.

Ms. Sterling filed a claim with the Equal Employment Opportunity Commission ("EEOC") on June 25, 2018, alleging that she was not hired for the position on the basis of age and associational disability discrimination (Dkt. No. 10, ¶ 45). The EEOC subsequently issued a Notice of Right to Sue to Ms. Sterling on October 22, 2018 (*Id.*). This lawsuit followed.

6

## II.      Standard of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.     Analysis

### A.      Overview Of Pending Claims

Defendants make three arguments which dispose of Ms. Sterling's claims against UAPTC, against all defendants under the Rehabilitation Act, and against Dr. Wallace in his individual capacity under the ADA and ADEA.  Ms. Sterling concedes these three arguments.

As an initial matter, defendants argue that UAPTC should be dismissed from the case because it is not a legal entity capable of being sued (Dkt. No. 8, at 2).  Instead, UAPTC is a

campus of the University of Arkansas System (Dkt. No. 9, at 8).  *See Assaad-Faltas v. Univ. of Ark. for Med. Scis.*, 708 F. Supp. 1026, 1029 (W.D. Ark. 1989), *aff'd*, 902 F.2d 1572 (8th Cir. 1990) (recognizing that campus of university is not a separate entity which can be sued).  Ms. Sterling agrees that UAPTC is not an entity that can be sued (Dkt. No. 14, at 1).  The Court therefore dismisses without prejudice Ms. Sterling's claims against UAPTC.

Defendants also argue that Ms. Sterling has failed to state a claim for which relief can be granted under the Rehabilitation Act (Dkt. No. 9, at 28–29).  Ms. Sterling clarifies in her response to defendants' motion for summary judgment that she "drops the Rehab Act claims" (Dkt. No. 14, at 2).  It is therefore not necessary for the Court to determine whether Ms. Sterling fails to state a claim under the Rehabilitation Act.   The Court dismisses Ms. Sterling's claims under the Rehabilitation Act.

Defendants further argue that Dr. Wallace in his individual capacity is entitled to summary judgment on Ms. Sterling's claims under the ADA and ADEA (Dkt. No. 8, at 2).  Defendants contend that agency supervisory employees may not be held individually liable under the ADA or ADEA (Dkt. No. 9, at 10–11, 31).  Ms. Sterling clarifies in her response to defendants' motion for summary judgment that she "does not bring individual capacity claims against Wallace under the ADEA [or] ADA" (Dkt. No. 14, at 2).  This statement is consistent with Ms. Sterling's amended complaint in which she claimed only that "the board members in their official capacity are sued under the ADA and ADEA" (Dkt. No. 2, ¶ 2).  The Court therefore need not address whether Dr. Wallace can be sued in his individual capacity under the ADA and ADEA or whether he is entitled to qualified immunity under those statutes because Ms. Sterling has not sued Dr. Wallace under those statutes.

8

Ms. Sterling's remaining claims are: (1) under the ADA against the members of the Board of Trustees in their official capacities for injunctive relief; (2) under the ADEA against the members of the Board of Trustees in their official capacities for injunctive relief; and (3) under the FMLA against all defendants for injunctive and monetary relief (Dkt. No. 14, at 1–2; Dkt. No. 2, ¶ 2). Ms. Sterling seeks relief in the form of cleaning of her personnel file, a directive not to retaliate, awarding the next three available promotions to her, promotion to the position at issue, training, declaratory relief, an apology, posting of this lawsuit and verdict, a trial by jury, and reasonable fees and costs on all claims (Dkt. No. 2, at 5). Additionally, she seeks recovery of lost wages and benefits, front pay or reinstatement, and liquidated damages on her FMLA claims (*Id.*).

Defendants also argue that all defendants in their official capacities are entitled to sovereign immunity on all claims for monetary and injunctive relief (Dkt. No 8, at 2). Defendants maintain that Dr. Wallace in his individual capacity is entitled to qualified immunity on Ms. Sterling's FMLA claims because, according to defendants, he did not violate any clearly established law and acted reasonably under the circumstances (*Id.*, at 3). Finally, defendants argue that Ms. Sterling's ADA, ADEA, and FMLA claims all fail on the merits either because she cannot establish *prima facie* cases under the relevant statutes or because she cannot establish that defendants' reason for not hiring Ms. Sterling was pretextual (*Id.*, at 2–3). The Court addresses each of these arguments.

### B.      Defense Of Sovereign Immunity

#### 1.      Monetary Relief

Defendants argue that the Eleventh Amendment bars Ms. Sterling's claims to the extent that she seeks monetary relief under the ADA and ADEA against the members of the Board of Trustees and Dr. Wallace in their official capacities (Dkt. No. 9, at 11, 31). Defendants also argue that they are entitled to summary judgment because official capacity claims for monetary relief

under the FMLA are barred by the Eleventh Amendment (Dkt. No. 8, at 2).  Ms. Sterling responds that she can obtain monetary relief from the Board of Trustees under the FMLA because her leave was not for her own health condition (Dkt. No. 14, at 1).

The Eleventh Amendment protects states from suits brought by citizens.  U.S. Const. amend. XI.  This protection extends to suits against a state's departments and agencies.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  State officials acting in their official capacities are entitled to sovereign immunity when plaintiffs seek retroactive monetary relief which would be "paid from public funds in the state treasury[.]"  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  However, state officials may be subject to suits for prospective injunctive relief to prevent ongoing violations of federal law.  *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

The members of the Board of Trustees and Dr. Wallace in their official capacities are entitled to sovereign immunity to the extent that Ms. Sterling seeks monetary relief under the ADA and ADEA.  Arkansas is immune from suits under the ADA and ADEA and has not waived its immunity under either statute.  *See Bunch v. Univ. of Ark. Bd. of Trustees*, 863 F.3d 1062, 1067– 68 (8th Cir. 2017) (recognizing Arkansas' immunity under ADA); *Whitten v. Ark. Dep't of Human Servs.*, 2 Fed. Appx. 595, 597 (8th Cir. 2001) (recognizing Arkansas' immunity under ADEA). Further, sovereign immunity bars suits against state officials in their official capacity for retroactive monetary relief.  *Edelman*, 415 U.S. at 663.  Therefore, to the extent that Ms. Sterling seeks monetary relief under the ADA and ADEA, sovereign immunity bars her claims.

However, Ms. Sterling's claims against defendants in their official capacities for monetary relief under the FMLA are not barred by sovereign immunity because Congress validly abrogated state sovereign immunity for claims under the FMLA's care-of-others provision.  Congress may abrogate state sovereign immunity when enacting legislation pursuant to its powers under the

Fourteenth Amendment.  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Section Five empowers Congress "to enforce, by appropriate legislation, the provisions of this article."  *Id.* § 5. The Fourteenth Amendment "embod[ies] significant limitations on state authority" and thus allows Congress to "provide for private suits against States or state officials which are constitutionally impermissible in other contexts."  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).  Under the FMLA, states are immune from suit when an employee sues under the FMLA's self-care provision. *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 33 (2012); 29 U.S.C. § 2612(a)(1)(D).  However, the Supreme Court has held that Congress validly abrogated state sovereign immunity under the FMLA's care-of-others provision, which Congress passed pursuant to its powers under Section Five of the Fourteenth Amendment to remedy unconstitutional gender discrimination.  *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 730 (2003); 29 U.S.C. § 2612(a)(1)(C).

Ms. Sterling's leave was covered under the FMLA's care-of-others provision, based on the undisputed record evidence before the Court.  Under the FMLA, eligible employees are entitled to leave to care for a family member with a serious health condition.  29 U.S.C. § 2612(a)(1)(C).  A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."  *Id.* § 2611(11)(B).  Cancer is a serious health condition.  S. Rep. No. 103–3, at 29 (1993).  Further, doctor's appointments for the treatment of serious health conditions are covered by the FMLA.  *Phillips v. Mathews*, 547 F.3d 905, 910 (8th Cir. 2008).  Here, it is undisputed that Ms. Sterling took FMLA leave during the time period of May 8, 2018, that her leave was approved by her supervisor, and that Ms. Sterling took leave to attend a "cancer doctor's appointment" with her mother (Dkt. No. 10, ¶¶ 21–23).

11

Based on this record evidence, Ms. Sterling can establish that her leave fell under FMLA's care-of-others provision. The members of the Board of Trustees and Dr. Wallace in their official capacities are therefore not entitled to sovereign immunity on Ms. Sterling's claims for monetary relief under the FMLA.

The Court grants defendants' motion for summary judgment on the issue of sovereign immunity on Ms. Sterling's claims for monetary relief under the ADA and ADEA but denies the motion on the issue of sovereign immunity on Ms. Sterling's claims for monetary relief under the FMLA.

### 2.      Injunctive Relief

Defendants are not entitled to sovereign immunity on Ms. Sterling's claims for prospective injunctive relief. Defendants argue that the exception to sovereign immunity under *Ex parte Young* does not apply because Ms. Sterling has not alleged an ongoing violation of federal law and that there is no relief which could be granted to Ms. Sterling even if she could successfully bring a claim (Dkt. No. 9, at 31). Ms. Sterling responds that she can obtain prospective injunctive relief because she is suing the individual members of the Board of Trustees in their official capacities under *Ex parte Young* (Dkt. No. 14, at 1–2).

A plaintiff seeking injunctive relief against a state official under *Ex parte Young* must demonstrate both that she seeks prospective injunctive relief and that there is a continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985). A court considering whether the *Ex parte Young* exception applies need only conduct "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). The Eighth Circuit

has recognized that the *Ex parte Young* exception applies to suits against state officials where the plaintiff alleges that they were terminated in violation of federal law and seeks reinstatement.  *See Mahn v. Jefferson Cty.*, 891 F.3d 1093, 1099 (8th Cir. 2018) (permitting suit under *Ex parte Young* exception where plaintiff sought "declaratory relief that her employment was terminated in violation of the First Amendment . . . and the remedy of reinstatement to her position"); *see also Singer v. Harris*, CASE NO. 4:15CV00408 BSM, 2016 WL 10489850, at *5 (E.D. Ark. July 13, 2016) (permitting plaintiff's claim for prospective injunctive relief under ADA to proceed to trial where plaintiff's complaint sought "Declaratory for reinstatement or front pay").  In *Mahn*, a case involving First Amendment retaliation, the Eighth Circuit observed that reinstatement is an appropriate remedy under *Ex parte Young* because "[t]he goal of reinstatement . . . is not compensatory; rather, it is to compel the state official to cease her actions in violation of federal law and to comply with constitutional requirements."  *Mahn*, 891 F.3d at 1099 (quoting *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986)).

The Court concludes that, on a straightforward inquiry into Ms. Sterling's complaint, she seeks prospective injunctive relief against state officials to remedy an alleged failure to hire in violation of the ADA, ADEA, and FMLA.  In her complaint, Ms. Sterling represents that she seeks relief in the form of, among other things, cleaning her personnel file, a directive not to retaliate, awarding the next three available promotions to her, promotion to the position at issue, and training (Dkt. No. 2, at 5).  She alleges that she was not promoted because of her association with a person with a disability, because of her age, and because of her use of FMLA leave, all of which would be violations of federal law (*Id.*, at 4–5).  As in a case for reinstatement, the relief Ms. Sterling seeks would, if granted, "compel the state official[s] to cease [their] actions in violation of federal law and to comply with . . . requirements" under federal law.  *Mahn*, 891 F.3d at 1099 (quoting

*Elliott*, 786 F.2d at 302).  The *Ex parte Young* exception therefore applies, and defendants are not entitled to sovereign immunity on Ms. Sterling's claims for prospective injunctive relief.

Defendants' arguments to the contrary are unavailing.  Defendants argue that Ms. Sterling does not seek prospective injunctive relief based on statements Ms. Sterling made at her deposition (Dkt. No. 9, at 12–13).  At her deposition, Ms. Sterling was asked, and answered, as follows:

> Q.    Okay.  Are you asking to be placed in the coordinator position and Mrs. Howell -- Mrs. Howell removed from that position?
>
> A.    Well, if I was offered the position, that would be a different scenario.  I don't know how to answer that one.  I mean if we were today and we were doing the hiring and I was offered the job, I would take the job.  Does that answer that question?
>
> Q.    Right.  But since that is not the situation we have --
>
> A.    Right, but is -- is --
>
> Q.    Would you want Ms. Howell -- are you asking that Ms. Howell be removed and you placed in the position?
>
> A.    That's -- I'm having a problem with the question.
>
> Q.    Well, its times --
>
> A.    Okay.  I mean -- I mean I'm just saying this.  This is -- yes.
>
> Q.    You would want the university to --
>
> A.    Well, I just don't want --
>
> Q.    -- fire Mrs. Howell and hire you?
>
> A.    No, I don't really want her to be fired is where I'm having the problem with; is -- the problem is that I felt like I was the most qualified for the position, okay, and I should have gotten the position.  Now, they hired her now.  She's been there a year and a half.  I don't know what they should do with her.  Okay.  That's --
>
> Q.    Well, that's why I asked because I'm not sure what – what -- are you asking to be placed in any other jobs?
>
> A.    Currently?

14

Q.     Yes.  Uh-huh.

A.     No.

Q.     Are there any jobs that you are aware of in particular or at this time that you would like to be placed in?

A.     No, not that I -- I haven't looked at the jobs.

(Dkt. No. 8-1, at 18–19).

Based on the record evidence before the Court construing all reasonable inferences in favor of Ms. Sterling, Ms. Sterling seeks promotion to the position at issue, among other forms of prospective injunctive relief.  This satisfies the inquiry under *Ex parte Young*.  *See Mahn*, 891 F.3d at 1099 ("The Eleventh Amendment does not bar the relief of reinstatement.").

Defendants further argue that they may not be sued for injunctive relief because "[w]ith regard to the ADEA, the United States Supreme Court has never held that the *Ex parte Young* doctrine may be used to circumvent the Eleventh Amendment" (Dkt. No. 9, at 12).  However, suits against state officials in their official capacity for prospective injunctive relief are permissible under the ADEA notwithstanding the fact that the Supreme Court has not explicitly applied *Ex parte Young* to the ADEA.  Courts within the Eighth Circuit have allowed suits for prospective injunctive relief against state officials under the ADEA.  *See, e.g.*, *Jackson v. Univ. of Ark. for Medical Scis.*, No. 4:08CV04234–WRW, 2009 WL 890518, at *2 (E.D. Ark. March 31, 2009); *see also Drye v. Univ. of Ark. for Medical Scis. ex rel. Univ. of Ark. Bd. of Trustees*, No. 4:09CV00922 JLH, 2011 WL 288564, at *1 (E.D. Ark. Jan. 27, 2011) (collecting cases). Defendants do not cite authority to the contrary.  The Court therefore declines to find an exception to *Ex parte Young* for claims under the ADEA.

15

For these reasons, the Court denies defendants' motion for summary judgment on the issue of sovereign immunity on Ms. Sterling's claims for injunctive relief under the ADA, ADEA, and FMLA.

### C.      Defense Of Qualified Immunity

Defendants next contend that Dr. Wallace in his individual capacity is entitled to qualified immunity on Ms. Sterling's FMLA claim.  Defendants argue that "a reasonable official would not have known that his actions violated any of Sterling's FMLA rights" (Dkt. No. 9, at 38).  Ms. Sterling contends that Dr. Wallace is not entitled to qualified immunity because retaliation and discrimination are clearly established as illegal under the FMLA (Dkt. No. 14, at 1).

The Court concludes that Dr. Wallace is not entitled to qualified immunity because qualified immunity is not available to defendants on an FMLA claim.  *Darby v. Bratch*, 287 F.3d 673, 682 (8th Cir. 2002).  The Eighth Circuit held in *Darby* that the FMLA "creates clearly established statutory rights, including the right to be free of discrimination or retaliation on account of one's exercise of leave rights granted by the statute." *Id.*  Courts in this Circuit therefore routinely reject defenses of qualified immunity under the FMLA.  *Fiedler v. Nebraska*, 4:08CV3144, 2010 WL 11526885, at *4 (D. Neb. Oct. 15, 2010); *Craig v. Wingfield*, No. 4:05CV000791 JMM, 2007 WL 1219742, at *4 (E.D. Ark. Apr. 25, 2007); *Lambert v. Potter*, No. Civ. 00–2580, 2004 WL 229080, at *11 (D. Minn. Feb. 2, 2004).  Defendants cite no law to the contrary.

The Court therefore denies defendants' motion for summary judgment on the issue of qualified immunity under the FMLA.

16

### D.     Merits Of Claims

An employee asserting discrimination or retaliation claims under the ADA, ADEA, and FMLA may demonstrate that their employer discriminated or retaliated against them through direct or indirect evidence.  In the absence of direct evidence of discrimination or retaliation, the Eighth Circuit has adopted the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014).  The *McDonnell Douglas* analysis has three parts.  First, the employee must establish a *prima facie* case of discrimination or retaliation under the relevant statute.  In making out a *prima facie* case, the "overarching philosophy of the *McDonnell Douglas* system of proof . . . requires only a minimal showing before requiring the employer to explain its actions."  *Smith v. Allen Health Sys.*, 302 F.3d 827, 833 (8th Cir. 2002).  Second, the burden shifts to the employer, who must articulate a legitimate, nondiscriminatory justification for its actions.  *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006).  Third, the burden shifts back to the employee to introduce evidence either demonstrating that the employer's proffered justification is pretextual or proving actual discrimination.  *Chappel v. Bilco Co.*, 675 F.3d 1110, 1117 (8th Cir. 2012).  On a motion for summary judgment, the court's role is to determine whether a genuine issue of material fact exists as to any of these elements.  *Johnson v. Dollar General*, 880 F. Supp. 2d 967, 995 (N.D. Iowa 2012).

Although the requirements for a *prima facie* case vary somewhat between the ADA, ADEA, and FMLA, the parties' arguments as to the latter two parts of the *McDonnell Douglas* analysis are the same across all three statutes.  The Court will therefore analyze whether Ms. Sterling can establish a *prima facie* case under the ADA, ADEA, and FMLA; whether defendants

17

can establish a legitimate, nondiscriminatory reason for choosing not to hire Ms. Sterling; and whether Ms. Sterling can demonstrate that this reason is pretextual.

          **1.**        **Whether Ms. Sterling Can Establish A *Prima Facie* Case**

          **a.**        **Under The ADA**

Under the ADA, Ms. Sterling can establish a *prima facie* case by demonstrating that she was qualified for the position, that she was subject to an adverse employment action, that she had a known association with a person with a disability, and that the adverse employment action occurred under circumstances raising a reasonable inference that her association with a person with a disability was a determining factor in the adverse employment action. *Myers v. Hog Slat, Inc.*, 55 F. Supp. 3d 1145, 1157 (N.D. Iowa 2014).

First, defendants do not contest that Ms. Sterling was qualified for the Coordinator position. It is undisputed that all applicants to the Coordinator position were screened for minimum qualifications prior to being offered interviews (Dkt. No. 10, ¶ 18). This satisfies the "minimal showing" required on this element of her *prima facie* case. *Smith*, 302 F.3d at 833.

Second, defendants do contest whether Ms. Sterling suffered an adverse employment action and claim that she did not. Defendants argue that Ms. Sterling's potential hire to the Coordinator position "would not have afforded any greater benefits or material advantages" because the Coordinator position paid less per month than an academic faculty position (Dkt. No. 9, at 33). The Eighth Circuit has described an adverse employment action as "a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dept. of Correctional Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). The Eighth Circuit

18

has also recognized that "[u]nquestionably, failure to promote can constitute an adverse employment action that would support a plaintiff's retaliation claim." *AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir. 2014).  The Coordinator position to which Ms. Sterling applied paid $48,000 annually, and the faculty position which Ms. Sterling assumed after her position as interim dean expired on June 30, 2018, paid $40,450 (Dkt. No. 10, ¶¶ 15–16).  The Court has reviewed all record evidence, including but not limited to Ms. Sterling's deposition testimony (Dkt. No. 8-1, at 12–13, 22).  On this record evidence, the Court declines to find as a matter of law that Ms. Sterling did not suffer an adverse employment action when defendants failed to hire her for the Coordinator position.  There is sufficient record evidence to determine Ms. Sterling establishes this element of her *prima facie* case.

Third, based on the record evidence before the Court, construing all reasonable inferences in favor of Ms. Sterling, defendants are not entitled to judgment as a matter of law on whether defendants knew that Ms. Sterling had an association with a person with a disability.  Defendants argue that Dr. Wallace was the only one with any knowledge of Ms. Sterling's association and that this knowledge was limited to an email asking to reschedule her interview in order to take her mother for cancer treatment (Dkt. No. 9, at 33).  It is undisputed that Ms. Sterling sent an email less than a week before her scheduled interview to notify Dr. Wallace that she would be attending a cancer doctor's appointment with her mother on the day of her interview (Dkt. No. 10, ¶ 21).  It is also undisputed that Dr. Wallace expressed his sympathy to Ms. Sterling and agreed to reschedule (*Id.*, ¶ 22).  This record evidence is sufficient to meet Ms. Sterling's burden at the summary judgment stage on this element of her *prima facie* case.

Fourth, defendants are not entitled to judgment as a matter of law in their favor on the record evidence before the Court regarding whether Ms. Sterling can show an inference of

19

discrimination (Dkt. No. 9, at 34).  Close temporal proximity is sometimes sufficient to establish the minimal showing of a causal connection between a protected activity and adverse employment action under the *McDonnell Douglas* analysis, particularly when the exercise of statutory rights and adverse employment action are less than two weeks apart.  *Smith*, 302 F.3d at 833.  It is undisputed that Ms. Sterling notified Dr. Wallace of her mother's health condition on May 2, 2018, that Ms. Sterling interviewed for the Coordinator position on May 8, 2018, and that Dr. Wallace made the decision to hire someone else on May 10, 2018 (Dkt. No. 10, ¶¶ 21, 35).  This short timeline, especially when coupled with the other disputed record evidence before the Court about this hiring decision, raises a reasonable inference that Ms. Sterling's association with a person with a disability was a determining factor in hiring for the Coordinator position.

Based on the record evidence before the Court, construing all reasonable inferences in favor of Ms. Sterling, the Court determines that the record evidence is sufficient for Ms. Sterling to satisfy her *prima facie* case; defendants are not entitled to summary judgment in their favor based on an assertion that Ms. Sterling fails to establish the four elements of a *prima facie* case under the ADA.

### b.    Under The ADEA

Under the ADEA, Ms. Sterling can establish a *prima facie* case by demonstrating that she was over 40, that she was qualified for the position, that she was not hired, and that a younger person was hired to fill the position.  *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 n.3 (8th Cir. 2008).  Defendants assume for the purposes of their motion for summary judgment that Ms. Sterling can establish her *prima facie* case under the ADEA (Dkt. No. 9, at 15).  Here, it is undisputed that Ms. Sterling was over 40, that she was not hired for the Coordinator position, and that a younger person was hired to fill the position (Dkt. No. 10, ¶¶ 1, 20).  Additionally, as

explained above, Ms. Sterling met the minimum qualifications for the Coordinator position.  Ms. Sterling can therefore establish a *prima facie* case under the ADEA.

### c.      Under The FMLA

Under the FMLA, Ms. Sterling can establish a *prima facie* case by demonstrating an exercise of statutory rights, an adverse employment action, and a causal connection between the exercise of rights and the adverse action.  *Hite*, 446 F.3d 865.  Ms. Sterling satisfies the first two elements of her *prima facie* case under the FMLA.  First, it is undisputed that Ms. Sterling exercised rights under the FMLA by taking leave (Dkt. No. 10, ¶ 21).  Second, as described above, on the record evidence before the Court, the Court determines that Ms. Sterling makes a submissible case that she suffered an adverse employment action when not hired for the Coordinator position.

Third, Ms. Sterling can establish a causal connection between her use of FMLA leave and Dr. Wallace's decision not to hire her for the Coordinator position.  To prove a causal connection, an employee must introduce evidence giving rise to an inference that an employer's retaliatory motive played a part in the adverse employment action.  *Kipp v. Mo. Hwy. & Transp. Comm'n*, 280 F.3d 893, 896–97 (8th Cir. 2002).  A causal connection may also be demonstrated by temporal proximity between the protected activity and the adverse employment action, though such proximity is rarely sufficient to establish the causal link on its own.  *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 924–25 (8th Cir. 2014).

Ms. Sterling argues that there was a causal connection between her FMLA leave and Dr. Wallace's not hiring her for the Coordinator position because Dr. Wallace knew that she had planned to take leave for an FMLA-qualifying condition and because of the temporal proximity between her FMLA leave and her non-hire (Dkt. No. 14-1, at 19, 20).  Defendants contend that

21

Dr. Wallace testified that he knew nothing of Ms. Sterling's FMLA leave status and that even if he had, it would not have had any bearing on his decision (Dkt. No. 9, at 35).  It is undisputed, however, that Ms. Sterling communicated to Dr. Wallace that she may need to reschedule her interview for the Coordinator position because she would be attending a "cancer doctor's appointment" with her mother (Dkt. No. 10, ¶¶ 21–23).  Dr. Wallace was therefore on notice that Ms. Sterling intended to take leave for an FMLA-qualifying condition, even if Ms. Sterling did not explicitly declare that she was taking FMLA leave.  *See Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000) ("An employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work.").  It is also undisputed that Ms. Sterling sent this email on May 2, 2018, that she took FMLA leave on May 8, 2018, and that Dr. Wallace made the decision to hire someone else on May 10, 2018 (Dkt. No. 10, ¶¶ 21, 35).  As discussed above, this timeline establishes close temporal proximity between Ms. Sterling's use of FMLA leave and her non-hire and supports an inference of discrimination, especially when coupled with the other disputed record evidence before the Court about this hiring decision.  Drawing all justifiable inferences in favor of Ms. Sterling, the Court concludes that the record evidence satisfies Ms. Sterling's burden to establish a *prima facie* FMLA claim.

### 2.     Whether Defendants Articulate A Legitimate Non-Discriminatory Reason For The Hiring Decision

Defendants articulate a legitimate, nondiscriminatory reason for hiring someone other than Ms. Sterling.  Defendants argue that Dr. Wallace chose Ms. Howell over Ms. Sterling because Ms. Howell "was the best qualified person for the job" whose "prior experience aligned most closely with the essential duties and preferred qualifications" (Dkt. No. 9, at 16).  "Prioritizing a certain set of skills over others is a legitimate, nondiscriminatory reason for a hiring decision."  *Farver v.*

*McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019).  Here, Dr. Wallace testified that he prioritized a candidate who had "experience with special events management, community engagement and diversity of constituency groups," and that those qualities stood out to him as he compared the qualifications of the applicants (Dkt. No. 8-2, at 23).  Dr. Wallace emphasized that the chosen candidate had "experience and direct alignment with the key functions of this position of creating community education programs[ and] working with community organizations in central Arkansas" (*Id.*).  The Court acknowledges that Ms. Sterling argues, and other record evidence supports her claim, that she was more qualified for the job than the chosen candidate (Dkt. No. 14-1, at 9–13). Defendants have met their burden at this stage of the analysis, and the burden then shifts to Ms. Sterling.

### 3.      Whether Ms. Sterling Can Establish Pretext

Ms. Sterling has the burden to establish a genuine issue of material fact in dispute as to whether defendants' stated reason was merely pretext for intentional discrimination.  The Eighth Circuit has recognized that "[a]n employee's attempt to prove pretext or actual discrimination requires more substantial evidence than it takes to make a prima facie case, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification."  *Phillips v. Matthews*, 547 F.3d 905, 912–13 (8th Cir. 2008) (quoting *Smith*, 302 F.3d at 834).  Accordingly, "skeletal assertions are insufficient to prove pretext."  *Hutton v. Maynard*, 812 F.3d 679, 685 (8th Cir. 2016).  A plaintiff's burden to establish pretext requires showing that the prohibited reason more likely motivated the employer's action than the employer's stated nondiscriminatory reason:

> There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext.  A plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact.  Alternatively, a plaintiff may

> show pretext by persuading the court that a prohibited reason more likely motivated
> the employer.  Either route amounts to showing that a prohibited reason, rather than
> the employer's stated reason, actually motivated the employer's action.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (internal citations and

quotations omitted).  On a motion for summary judgment, a plaintiff must identify a genuine issue

of material fact as to whether the defendant's stated reason was pretextual.  *Id.* at 1050.

Ms. Sterling argues that defendants' stated reason for choosing not to hire her is unworthy

of credence because it has no basis in fact.  One way to establish pretext is to show indirectly that

the employer's proffered explanation is unworthy of credence because it has no basis in fact.

*Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001).  It is possible for strong

evidence of a *prima facie* case to establish pretext as well.  *Id.* at 726.  As stated above, Dr. Wallace

testified that he preferred a candidate with "experience with special events management,

community engagement and diversity of constituency groups" (Dkt. No. 8-2, at 23).  According to

Dr. Wallace, Ms. Howell had this sort of experience (*Id.*).  However, Ms. Sterling argues that she

was more qualified than Ms. Howell for the Coordinator position because Ms. Sterling had worked

at UAPTC for several years, had contacts there, and had more relevant education and experience

(Dkt. No. 14-1, at 9–10).  Ms. Sterling also argues that she had developed relationships with

community organizations, as detailed in the job description for the Coordinator position (*Id.*, at

11).  Indeed, Ms. Sterling testified in her deposition as to her experience with events management

and community engagement (Dkt. No. 8-1, at 24).  Other record evidence supports Ms. Sterling's

arguments (Dkt. No. 8-8, at 12–16).  Given these factual disputes, on the record evidence before

it, the Court concludes that it is for the jury to decide whether defendants' stated justification for

choosing not to hire Ms. Sterling is unworthy of credence.

Additionally, there is evidence in the record to support either party's arguments as to whether or not a prohibited reason more likely motivated defendants' actions.  The parties do not dispute that the hiring committee scored Ms. Sterling higher overall compared to Ms. Howell (Dkt. No. 10, ¶ 28).  However, the parties do dispute the extent to which the hiring committee and Dr. Wallace deviated from UAPTC's normal hiring practices in choosing a lower-scoring candidate. Ms. Sterling argues that she should have been given preference as an internal employee, that Dr. Wallace did not follow standard procedure in making the hiring decision, and that Dr. Wallace falsely explained what happened during the hiring committee's deliberations (Dkt. No. 14-1, at 20–21).  Evidence in the record supports Ms. Sterling's arguments that UAPTC had a policy of hiring internal candidates (Dkt. Nos. 8-8, at 6; 8-9, at 3), that the hiring committee deliberations were unusually brief (Dkt. Nos. 8-7, at 12, 14; 8-8, at 7), and that the hiring process did not follow standard policy and practice, which lends support to assertions that false statements were made (Dkt. Nos. 8-1, at 16–17; 8-8, at 7).  Following this hiring decision, Ms. Melton felt that Ms. Howell's selection violated school policy and told HR Director Young that Ms. Sterling had received a higher score (Dkt. No. 10, ¶ 39).  To address Ms. Melton's concerns, the Chancellor Ellibee asked Dr. Wallace, Ms. Young, and Ms. Young's supervisor, Ms. Smith, to meet the next day (Id., ¶ 40).  The content of the meeting is disputed by the parties.  Defendants argue that Dr. Wallace did not violate any hiring procedures and that he did not make any false statements (Dkt. No. 15, at 2–5).  Some evidence in the record supports defendants' contentions that the hiring process was not abnormal (Dkt. Nos. 8-2, at 6, 17, 20; 8-4, at 4; 8-10, at 2), and that there is no policy directing that the highest-scoring candidate must be chosen (Dkt. Nos. 8-1, at 17; 8-2, at 7; 8-10, at 2).

25

Further, with respect to Ms. Sterling's ADA and FMLA claims, the record evidence indicates temporal proximity.  It is undisputed that Ms. Sterling notified Dr. Wallace of her mother's health condition on May 2, 2018, that Ms. Sterling interviewed for the Coordinator position on May 8, 2018, and that Dr. Wallace made the decision to hire someone else on May 10, 2018 (Dkt. No. 10, ¶¶ 21, 35).  This short timeline, especially when coupled with the other disputed record evidence before the Court about this hiring decision, bolsters finding a genuine disputed issue of material fact regarding pretext.

The Court concludes that genuine disputed issues of material fact exist as to whether prohibited reasons actually motivated defendants' actions.  If Ms. Sterling's evidence is believed, then a reasonable jury could conclude that prohibited reasons more likely motivated defendants' decision not to hire Ms. Sterling.  If defendants' evidence is believed, then a reasonable jury could conclude that the stated justification was more likely legitimate.  Genuine issues of material fact are in dispute and should be resolved by the fact finder.  Likewise, credibility determinations must be left to the trier of fact at this stage.  Accordingly, summary judgment in favor of defendants is not appropriate.

The Court therefore denies defendants' motion for summary judgment on the merits of Ms. Sterling's claims under the ADA, ADEA, and FMLA.

IV.     **Conclusion**

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment (Dkt. No. 8).

It is so ordered this 23rd day of October, 2020.

Kristine G. Baker
United States District Judge

26